UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DARRYL SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 3:25-cv-03263-SEM-DJQ ) |
| WESTERN ILLINOIS CORRECTIONAL CENTER, *et al.* | ) ) ) ) |
| Defendants. | ) |

## **ORDER**

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, presently incarcerated at Western Illinois Correctional Center, asserts claims for deliberate indifference to serious medical needs.

The case is before the Court for a merit review of Plaintiff's complaint. The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### **Facts Alleged**

On May 27, 2024, Defendant Officer Shute was driving Plaintiff from Clayton Work Camp to Western Illinois Correctional Center. Shute hit a deer. The deer then hit another car. Shute did not stop, did not file a police report, and did not check on Plaintiff. Plaintiff told Shute that he was not buckled in and had been hurt. Shute said that since they were ten minutes from the prison she was going to drive there, and Plaintiff could be assessed by medical staff at the prison. Plaintiff was experiencing significant neck, back, left arm, and left elbow pain.

At the prison, Plaintiff was seen by a nurse and provided with ibuprofen. He was told to put in for Nurse Sick Call if his pain worsened. The next day, Plaintiff's pain had worsened to severe pain. He told a Lieutenant about his pain and was taken to

healthcare and seen by a nurse. He reported severe pain. The nurse told Plaintiff he could not receive other treatment or go to the hospital but instead must put in a physician request slip. Plaintiff did so every day from May 28, 2024, through June 12, 2024, and was not seen by a doctor in that period, so he began filing grievances asserting he was being denied medical care. Plaintiff never received appropriate medical treatment for his injuries. He is still experiencing severe pain due to lack of medical care.

### Analysis

Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Nurse Doe, who saw Plaintiff on May 28, 2024, and refused to provide treatment; he may state a claim against other Doe healthcare unit staff who failed to provide treatment and/or schedule him to be seen by a provider, but he will need to ask the Court to add any such additional party after he receives initial discovery from which he may be able to identify such additional individual. Plaintiff has alleged that Nurse Doe knowingly denied Plaintiff needed medical care, pain medicine, or both. Plaintiff alleges the delay in treatment caused him to suffer

significant unnecessary pain. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc).

Plaintiff does not state a claim against prison healthcare contractor Wexford Health Sources, Inc. He includes no allegations that would plausibly show that Wexford's policies, rather than the actions of individuals, were the moving force behind the denial of medical care that he alleges occurred.

Plaintiff does not state a claim against Correctional Officer Shute. Shute is alleged to have made an on-the-fly call, after an accident, to proceed to the nearby prison instead of stopping or proceeding to a hospital. While her decision may, possibly, have been negligent, there is no plausible view of these allegations that she consciously disregarded a high risk of harm to Plaintiff such that she could be responsible for violating his constitutional rights.

Plaintiff does not state a claim against Western Illinois Correctional Center, as prison buildings and facilities are not proper defendants to civil rights lawsuits. *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

Plaintiff does not state a claim against the Illinois Department of Corrections, as it is a branch of the State of Illinois and is

entitled to sovereign immunity. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016).

**Motion to Request Counsel**

Plaintiff seeks Court assistance in finding a volunteer attorney to represent him in this lawsuit. The Seventh Circuit recently summarized the legal standard for Plaintiff's request as follows:

> Under 28 U.S.C. § 1915(e)(1), a federal court "may request an attorney to represent any person unable to afford counsel." The statute is "entirely permissive." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Civil litigants have no constitutional or statutory right to court-appointed counsel, and § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel." *Id.* at 653 (quoting *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). Rather, the statute "codifies the court's discretionary authority to recruit a lawyer to represent an indigent civil litigant *pro bono publico.*" *Id.*
>
> "Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). "District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Id.*
>
> Accordingly, we have recently explained that "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated individuals) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022). Based on these and other practical considerations, we have held that district judges should

engage in a two-step inquiry when faced with a request for pro bono counsel under § 1915(e)(1), asking first "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654.

The first step needs no elaboration. Step two "can be complex" and involves a pragmatic judgment about the difficulty of the case and the plaintiff's ability to present it to the court on his own. *Watts*, 42 F.4th at 760. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655. A judge will normally consider "the plaintiff's literacy, communication skills, educational level, and litigation experience" along with any evidence in the record "bearing on the plaintiff's intellectual capacity and psychological history." *Id.* But these are merely factors that are ordinarily relevant. No one factor is "necessary or conclusive." *Id.* at 655 n.9. Indeed, "[t]here are no fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* at 655. Ultimately, the "inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*

Finally, "the decision whether to recruit pro bono counsel is left to the district court's discretion." *Id.* at 654. Our job is to ensure that this discretion is exercised in accordance with appropriate legal principles. The "question on appellate review is not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.* at 658.

*Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024).

Here, Plaintiff has made a reasonable attempt to find an attorney. Turning to his ability to represent himself in this lawsuit, the Court finds that at this early stage, he can.

Plaintiff's claims are not factually difficult; he alleges he was refused medical care after being injured in a vehicle accident. Written discovery should produce to Plaintiff the relevant prison records related to his claims. Though certain incarcerated or formerly incarcerated witnesses may be difficult to contact, this issue is not unique to Plaintiff's case, and Plaintiff will have the opportunity to request trial subpoenas if the case progresses to that stage. Overall, then, the factual difficulty of Plaintiff's case does not favor Court assistance finding counsel.

Plaintiff's claims are not particularly legally difficult, though all federal litigation is difficult to a degree. His claim does include a mental state component, and reconsideration of the counsel issue may be appropriate at later stages of the case.

Plaintiff's pleadings are clear and legible. They are coherent. There is no indication that Plaintiff is unable to read, write, or comprehend. Plaintiff's education level is not before the Court, but once again he appears well able to communicate. There is no

information before the Court that indicates Plaintiff is mentally impaired to the extent that he cannot represent himself.

The Court finds Plaintiff can adequately represent himself. He may renew his request for counsel if he finds later stages of the case too difficult.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion to Request Counsel [4] is DENIED.**

2. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that the plaintiff states an Eighth Amendment claim for deliberate indifference to a serious medical need against Nurse Doe, who saw Plaintiff on May 28, 2024, and refused to provide treatment; he may state a claim against other Doe healthcare unit staff who failed to provide treatment and/or schedule him to be seen by a provider, but he will need to ask the Court to add any such additional party after he receives initial discovery from which he may be able to identify such additional individual. The Clerk is to add Nurse Doe to the docket as a Defendant. The Clerk is directed to add as a Defendant Western Illinois Correctional Center Warden Brittany Greene for the sole purpose of filing an Answer, providing initial disclosures related to Plaintiff's medical care, and responding to discovery targeted at identifying the Doe Defendant. Defendants Western Illinois Correctional Center, Shute, Wexford, and IDOC are to be terminated. Any additional claims or parties shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

3. This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.

4. The court will attempt service on the defendants by mailing each defendant a waiver of service. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5. As to any defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.

6. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the defendants' positions. The court does not rule on the merits of those positions unless and until a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be

considered. After the defendants have been served and have answered, the court will enter an order setting discovery and dispositive motion deadlines.

7. The Court uses electronic filing. After defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed. This does not apply to discovery requests and responses. Discovery requests and responses are NOT filed with the clerk. Plaintiff must mail discovery requests and responses directly to counsel for the appropriate defendant. Discovery requests or responses sent to the clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until the court has entered a scheduling order, which will explain the discovery process in more detail.

8. Counsel for the defendants is hereby granted leave to depose the plaintiff. Counsel for the defendants shall arrange the time for the deposition.

9. The plaintiff shall immediately notify the court, in writing, of any change in mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit.

10. The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Entered this 12th day of December, 2025.

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE